## APPEAL OF CARRIE W. MEINHARD.

Docket No. 2100.    Submitted November 3, 1925.    Decided February 8, 1926.

Value of leasehold at January 8, 1917, determined.

*Henry F. Wolff, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the years 1918, 1919, and 1920, in the aggregate amount of $72,625.75, resulting from the refusal of the Commissioner to allow a deduction for exhaustion of a certain leasehold in New York City, a half interest in which the taxpayer acquired by gift on January 8, 1917, and owned during the taxable years involved. The taxpayer and the Commissioner have entered into a stipulation of the principal facts involved in the appeal, other than those of valuation.

### FINDINGS OF FACT.

The taxpayer is an individual residing in New York City. Under date of April 10, 1902, a lease was entered into between Louisa M. Gerry, of Newport, R. I., and Walter J. Salmon, of New York City, covering the building known as the Bristol Building, located at the northwest corner of 42nd Street and Fifth Avenue, New York City, fronting 74½ feet on Fifth Avenue and 125 feet on 42nd Street, for a term beginning May 1, 1902, and ending April 30, 1922.

Thereafter, and in the year 1902, Walter J. Salmon duly assigned, transferred, and set over to Morton H. Meinhard a one-half interest in the said leasehold and the net profits thereof, and said Morton H. Meinhard thereby acquired a one-half interest therein. On January 8, 1917, Morton H. Meinhard duly assigned, transferred, and set over all of his right, title, and interest in and to said leasehold and the net profits thereof to the taxpayer (his wife) by way of absolute gift.

Since said transfer, the taxpayer has received all net profits thereof to which she thereby became entitled, and has reported the same each year in a separate Federal income-tax return, to wit, $35,278.40 for 1918, $54,522.65 for 1919, and $68,796.38 for 1920. In each of her returns for those years she has taken, as a deduction for depreciation, exhaustion, and amortization of her right, title,

and interest in said lease and leasehold estate, the sum of $37,309.04, which deductions have been disallowed by the Commissioner.

At the time of the taxpayer's acquisition of her half interest in the leasehold, the property was being operated as a general office building. There were eight floors in the building, consisting of the ground floor, the mezzanine floor, and six upper floors. The ground floor was rented for stores, the mezzanine floor for clothing shops, merchandise show rooms, etc., and the six upper floors as offices.

The lease on the Bristol Building, in which the taxpayer owned a one-half interest during the years 1918, 1919, and 1920, was held in the name of Walter J. Salmon. The consideration for the lease was an annual rental of $55,000, which amount was net to the lessor, taxes, insurance, repairs, and all charges of operating the building being borne by the lessee. The rentals collected, the operating costs, including taxes, insurance, etc., and the profits to the lessee for the full period of the lease, were as follows:

| Period. | Rentals collected. | Total expenses. | Profit. |
|---|---|---|---|
| May 1, 1902, to Dec. 31, 1903 | $96,238.59 | $116,401.46 | [1] $20,162.87 |
| Jan. 1, 1904, to Dec. 31, 1904 | 119,218.77 | 96,644.93 | 22,573.84 |
| Jan. 1, 1905, to Dec. 31, 1905 | 123,202.30 | 96,410.51 | 26,791.79 |
| Jan. 1, 1906, to Dec. 31, 1906 | 136,761.23 | 104,646.79 | 32,114.44 |
| Jan. 1, 1907, to Dec. 31, 1907 | 137,279.87 | 99,273.14 | 38,006.73 |
| Jan. 1, 1908, to Jan. 31, 1909 | 151,130.00 | 112,355.06 | 38,774.94 |
| Feb. 1, 1909, to Jan. 31, 1910 | 139,965.05 | 109,791.33 | 30,173.72 |
| Feb. 1, 1910, to Jan. 31, 1911 | 148,578.94 | 112,462.50 | 36,116.44 |
| Feb. 1, 1911, to Jan. 31, 1912 | 149,834.26 | 117,413.17 | 32,421.09 |
| Feb. 1, 1912, to Jan. 31, 1913 | 171,823.23 | 123,390.43 | 48,432.80 |
| Feb. 1, 1913, to Jan. 31, 1914 | 188,432.58 | 134,633.01 | 53,799.57 |
| Feb. 1, 1914, to Jan. 31, 1915 | 194,483.42 | 129,208.11 | 65,275.31 |
| Feb. 1, 1915, to Jan. 31, 1916 | 192,305.87 | 130,684.68 | 61,621.19 |
| Feb. 1, 1916, to Jan. 31, 1917 | 217,710.38 | 153,338.69 | 64,371.69 |
| Feb. 1, 1917, to Jan. 31, 1918 | 231,213.05 | 164,973.59 | 66,239.46 |
| Feb. 1, 1918, to Jan. 31, 1919 | 237,323.33 | 163,870.48 | 73,452.85 |
| Feb. 1, 1919, to Jan. 31, 1920 | 278,944.41 | 158,088.27 | 120,856.14 |
| Feb. 1, 1920, to Jan. 31, 1921 | 317,663.68 | 177,338.05 | 140,325.63 |
| Feb. 1, 1921, to Jan. 31, 1922 | 330,771.52 | 173,344.42 | 157,427.10 |
| Feb. 1, 1922, to Apr. 30, 1922 | 86,379.07 | 26,619.18 | 59,759.89 |

[1] Loss.

On January 1, 1917, the 13 leases on stores on the ground floor were for the full term of the lease of the Bristol Building, or to April 30, 1922. The leases on some of the stores provided for a slightly increased rental during the last years of the term, the total rentals from the stores for the last year of the term being approximately $10,000 more than for the year 1917. Most of the offices were rented from year to year.

The fair cash value of the entire leasehold on January 8, 1917, was $270,000, and the taxpayer's one-half interest therein was $135,000.

DECISION.

The deficiency should be determined in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

OPINION.

SMITH: It has been stipulated between the Commissioner and the taxpayer that on January 8, 1917, Morton H. Meinhard duly assigned, transferred and set over all of his right, title and interest in and to the leasehold on the Bristol Building, in which he had owned a one-half interest from 1902, to the taxpayer (his wife) by way of absolute gift. The taxpayer is entitled to deduct from gross income in her tax returns, for the years 1918, 1919, and 1920, a reasonable amount for the exhaustion of her interest in the leasehold. *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169. The only question before this Board is the value of her interest on January 8, 1917.

The evidence before this Board on the question of value consists of the testimony of three witnesses produced by the taxpayer. The testimony of two of them consists of a survey of income and expenditures made in connection with operations under the lease. The third witness testified as an expert in real estate appraisals. The taxpayer's principal reliance is upon an estimate of value made by the expert appraiser, based upon the excess of a purported fair rental value of the land and building over the actual rental reserved in the lease. The appraiser testified that a fair return on real estate in New York City on January 1, 1917, was 5 per cent on land value and 7 per cent on building value. He further testified that, in appraising the value of the leasehold in 1925 as of January 1, 1917, he found the fair market value of the land upon which the Bristol Building was located to have been $2,932,666 and the fair market value of the building, $217,710. From these figures he found the fair net rental value of the entire property to be $161,572.70 a year. The rental reserved in the lease was $55,000 a year, resulting in an excess of fair rental value in the opinion of the appraiser in the amount of $106,572.70. He stated that this is an annual benefit as of January 1, 1917, which the lessee received through having a low rent. The lease in question had an unexpired term from January 8, 1917, of approximately five years and four months. The appraiser then determined the purchase value of the leasehold in question, by the use of the Inwood tables for the purchase of the unexpired terms of leaseholds, as follows:

Annual benefit $106,572.70, multiplied by 4.21236 for the period, multiplied by 1.02721 for what is termed as the constant monthly factor.

The result arrived at is approximately $480,000. This formula is calculated at an interest rate of 6 per cent, compounded.

The appraiser then proceeds to estimate the value in question by two other methods, which he states, however, are merely by way of corroboration. The first is based upon the average rental which could be obtained for the property for the period between 1917 and 1922, computed as follows: (1) Rental floor area on ground floor for stores, 7,500 square feet, $20 a square foot, or a total of $150,000 a year gross rental for floor space; and (2) rentable space, upper portion of building, 42,000 square feet, $2.75 a square foot, or $115,500 gross. The total gross rent is $265,000, from which is deducted an estimated total expense of operation of $167,075, leaving a net profit of $98,425. The expense estimated consists of 40 per cent of gross rent for repairs, insurance, water rates, taxes, etc., 5 per cent for probable vacancies in upper or office portion, and the rent reserved on the basic lease of $55,000 a year. Applying the Inwood tables at 6 per cent for the unexpired term of approximately five and one-third years, produces a figure of about $443,882.72.

The second corroborative method used by the appraiser is based upon actual returns from the building as shown by the books. By the use of the Inwood tables at an interest rate of 6 per cent, the following result is worked out:

| Period. | Income. | Deferred. | Present worth. |
|---|---|---|---|
| | | Years. | |
| Jan. 1, 1917, to Jan. 1, 1918 | $66,239.46 | 1 | $64,190.24 |
| Jan. 1, 1918, to Jan. 1, 1919 | 73,452.85 | 2 | 67,151.06 |
| Jan. 1, 1919, to Jan. 1, 1920 | 120,856.14 | 3 | 104,234.15 |
| Jan. 1, 1920, to Jan. 1, 1921 | 140,325.43 | 4 | 114,174.43 |
| Jan. 1, 1921, to Jan. 1, 1922 | 157,427.10 | 5 | 120,839.99 |
| | | | 470,589.87 |
| To which add present worth figure estimated for period Jan. 1, 1922, to Apr. 30, 1922 | | | 18,000.00 |
| | | | 488,589.87 |

It should be noted, with respect to the basic method used by the appraiser in determining value, that it is only theoretical. He has chosen to use unknown factors rather than known factors. In his second corroborative method he has taken earnings of the leasehold for a period subsequent to January 8, 1917, rather than known earnings in years prior thereto. The evidence does show that the stores were rented on January 1, 1917, to April 30, 1922, the sublessees agreeing to pay a slightly higher rental during the last two or three years of the term. It could be foreseen on January 1, 1917, that the lessee would receive gross rentals for the stores for the year 1921 of approximately $10,000 more than was received for the year 1917. It could not, however, be foreseen what the expenses

of operation would be during the last years of the lease term, or whether there would be any more profit in the operation of the building for the year 1921 than there was for the year 1917. The office space was rented principally from year to year. No evidence has been introduced in this appeal that there was any decided upward trend in rents for office space in the vicinity of the Bristol Building during the years 1915, 1916, and 1917. According to the testimony of the expert appraiser, the great demand for office space came after 1918. We are not convinced from the testimony of the witnesses that the great profits from the leasehold for the years 1919, 1920, and 1921 could have been foreseen in 1917. Those increased profits were attributable principally to the higher prices for which the offices rented during those years, and the increase in office rentals in the vicinity of the Bristol Building did not take place until about 1920. The average net income from the leasehold for the three-year period February 1, 1916, to January 31, 1919, was $68,021.13. That amount is somewhat in excess of the net income from the leasehold for the fiscal year ended January 31, 1917. It is our opinion that a prospective purchaser of a leasehold of the character of that in which the taxpayer had a one-half interest could not fairly have computed on January 8, 1917, an annual net profit from the leasehold of more than $68,021.13, and that such profit would be subject to business hazards. Taking into consideration the increasing prices of labor and material and increasing interest rates, we think that the cash value of the leasehold at January 8, 1917, was not in excess of $270,000. The taxpayer, who had a one-half interest in the leasehold for the years 1918, 1919, and 1920, is entitled to deduct from gross income in her tax return for each of the years $25,425.64 for exhaustion of her interest in the leasehold.